UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN C. MOORE,  
    Plaintiff,

vs.

DONALD MORGAN, et al.,  
    Defendants.

Case No. 1:16-cv-655  
Dlott, J.  
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff, an inmate at the Ohio State Penitentiary and former inmate at the Southern Ohio Correctional Facility ("SOCF"), brings this prisoner civil rights action under 42 U.S.C. § 1983 against SOCF officials. Plaintiff alleges claims of excessive use of force and the denial of food, water, and sanitation for a seven-day period while in segregation in violation of the Eighth Amendment. This matter is before the Court on defendants' motion for summary judgment (Doc. 91) and plaintiff's response in opposition (Doc. 95).

**I. Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Satterfield*, 295

F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). However, "[f]acts that are not blatantly contradicted by [the evidence] remain entitled to an interpretation most favorable to the non-moving party." *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011). "In response to a properly supported summary judgment motion, the non-moving party 'is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Maston v. Montgomery Cty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 849 (S.D. Ohio 2011) (quoting *Sixty Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that the Court holds pleadings of pro se litigants to less stringent standards than formal

pleadings drafted by lawyers)); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter his duty to support his factual assertions with admissible evidence. *Maston*, 832 F. Supp. 2d at 851-52 (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)). When opposing a motion for summary judgment, a pro se party cannot rely on allegations or denials in unsworn filings. *Id.* (citing *Viergutz*, 375 F. App'x at 485).

**II. Excessive use of force claim**

Plaintiff alleges an Eighth Amendment claim against defendants Dyer, Messer, Patrick, and Van Sickle for their alleged excessive use of force against plaintiff on April 10, 2014.

**A. Plaintiff's Assault on Officer Conkle**

Defendants present video and other evidence showing the following: On April 10, 2014, Officer Conkle was checking the range in L-7 cellblock after inmates returned from lunch. (Doc. 91, Ex. C at 4). Plaintiff approached Officer Conkle in an aggressive manner, gesturing with his hands and head, to ask why his cell had been searched. (Doc. 91, Ex. A, video at Time Stamp 11:12; Ex. C at 4). Officer Conkle informed plaintiff that it was a routine search. (*Id.*). Plaintiff can be seen gesturing in an aggressive manner toward Officer Conkle. Officer Conkle then attempted to create distance between himself and plaintiff by stepping backwards. (Doc. 91, Ex. A at Time Stamp 11:26-11:32). Plaintiff continued to approach Officer Conkle, closing the distance between them despite direct orders from Conkle to stop and place his hands on the wall. (Doc. 91, Ex. A at Time Stamp 11:32-11:35; Ex. C at 4). Officer Conkle responded by deploying OC spray in plaintiff's facial area. (Doc. 91, Ex. A at Time Stamp 11:35). Officer Conkle again ordered plaintiff to place his hands on the wall, which plaintiff refused to do.

3

(Doc. 91, Ex. C at 4). Plaintiff can be seen initially walking away from Officer Conkle, but he suddenly turned, gestured, then lunged at Officer Conkle. (Doc. 91, Ex. A at Time Stamp 11:37-11:46). Plaintiff proceeded to attack Officer Conkle with closed fist punches until Conkle fell to the floor. (*Id*. at Time Stamp 11:46-11:53). Plaintiff continued to punch Officer Conkle as Conkle lay on the floor with his left hand while choking him with his right hand. (*Id*. at Time Stamp 11:46-11:53).

Plaintiff continued to choke and punch Officer Conkle in this manner until defendant Patrick arrived on the scene and gave plaintiff a direct order to let go of Officer Conkle, which plaintiff refused to do. Patrick then deployed OC spray in plaintiff's facial area. (*Id*. at Time Stamp 11:53-12:14). Defendant Van Sickle can be seen on the video following closely behind Patrick. (*Id.*; Ex. C at 5). At this point, Officer Conkle was immobile on the floor and lying in a pool of blood. (*Id*.). Defendants Van Sickle and Patrick then took plaintiff to the ground and held him there until Sgt. Brabson assisted them by placing handcuffs on plaintiff. (*Id*. at Time Stamp 12:14-12:54; Ex. C at 5-6, 9). Once he was secured with handcuffs, plaintiff was helped to his feet by Sgt. Brabson, defendant Van Sickle, and defendant Messer. (*Id*. at Time Stamp 12:58). The officers then began to escort plaintiff down the range. Plaintiff can be seen resisting the control of the escorting officers, and the officers responded by taking plaintiff to the wall. (*Id*. at Time Stamp 12:59-13:08).

Defendant Patrick did not assist the other officers in escorting plaintiff to segregation. Instead, he remained on all fours on the floor where plaintiff had initially been taken to the ground and stayed in this position until he was able to stand. (*Id*. at Time Stamp 12:47-13:50). (*Id*.). Later, a medical gurney arrived to transport Officer Conkle, who had been lying motionless since the end of plaintiff's assault, to the infirmary. (*Id*. at Time Stamp 12:15-14:05).

4

Officer Conkle was later transported to an outside hospital due to the injuries he sustained. (Doc. 91, Ex. C at 22).

**B. Escort of plaintiff on April 10, 2014 following assault on Officer Conkle**

After the officers placed plaintiff on the wall following his initial resistance, they continued to escort him down the range. (Doc. 91, Ex. A at Time Stamp 3:58)[1]. Plaintiff continued to resist the escorting officers and attempted to pull away from the officers. (Doc. 91, Ex. A at Time Stamp 4:11 through 4:17). A fourth officer, defendant Dyer, then appears on the video. Defendant Dyer followed the escorting officers to the stairwell leading to the segregation unit. (Doc. 91, Ex. A at Time Stamp 4:12).

When the escorting officers and plaintiff reached the stairs that exit the cell block, the medical gurney for Officer Conkle arrived at the top of the same set of stairs. (*Id*. at Time Stamp 4:25). The escorting officers responded by moving plaintiff to the wall to the right of the entryway to allow the gurney to pass. *Id*. The escorting officers and plaintiff were further delayed when the gurney pad slid down the stairs. Defendant Dyer retrieved the pad and placed it back on the gurney. (*Id*. at Time Stamp 4:28). The officer controlling the gurney then cleared the entryway to the stairs. (*Id*. at Time Stamp 4:44). Plaintiff and the escorting officers began to ascend the stairs as Sgt. Bear, who had been following the gurney, began descending the stairs. Plaintiff then lunged at Sgt. Bear. As the escorting officers struggled to control plaintiff, they appeared to lose their footing and descended to the landing of the stairs. (*Id*. at Time Stamp 4:46-4:48; Ex. C at 9). Plaintiff continued to struggle and the officers placed plaintiff on the ground to regain control over him. (*Id*. at Time Stamp 4:52). Defendant Dyer, who had been an observer until this point, then helped guide plaintiff to the ground. *Id.* While on the ground,

---

[1] This video is from a different camera angle.

5

plaintiff continued to struggle with the officers and began kicking his legs. (*Id.* at Time Stamp 4:53-5:39; Ex. C at 9). Defendant Dyer took control of plaintiff's left leg. *Id.*

Plaintiff was given several direct orders to stop resisting. Once plaintiff complied, the officers stood up and lifted plaintiff to his feet. (*Id.* at Time Stamp 5:30-5:40). The escorting officers and plaintiff proceeded up the stairway until they exit the camera's view. (*Id*. at Time Stamp 5:50). The Officers continued to escort plaintiff until they reached the J2 segregation corridor. (Doc. 91, Ex. C at 6). Plaintiff continued to pull away and resist officers the entire time he was being escorted. *Id.* Plaintiff was subsequently indicted and convicted of felonious assault based on his encounter with Officer Conkle.[2]

Plaintiff submits his own affidavit, which states in relevant part:

On 4-10-14 after being cuffed, while being escorted to segregation. Was assaulted in L-corridor by escorting officers Lt. Brad Dyers, Sgt Preston Messer, Luke Van Sickle and Matt Patrick. An unknown supervisor did punch me on the right side of my face. Causing pain, swelling, blood inside my mouth and a black eye.

(Doc. 3 at 16). Plaintiff also submits a Medical Exam Report dated April 10, 2014, which sets forth the following objective findings: "Area under right eye with swollen bruised nickel sized swollen knot by bottom lid. Inside of mouth cut right side. Left wrist swollen and bruised. Right arm swollen and bruised." (Doc. 3 at 33). X-rays of plaintiff's left hand, right forearm, and left wrist taken that same date revealed "no acute findings." (Doc. 3 at 34-36). Plaintiff has submitted two affidavits from fellow SOCF inmates, which describe generally the conditions at SOCF but do not address the specific claims plaintiff raises in this case. Plaintiff also presents

---

[2] Plaintiff was criminally prosecuted for his attack on Officer Conkle. On June 3, 2015, a jury found plaintiff guilty of felonious assault in violation of Ohio Revised Code §§ 2903.11(A)(1) and (D)(1). *See* Scioto County Criminal Case No. 14CR000355. (Doc. 91 at 3, n.2).

the trial transcript from his criminal trial and cites to specific excerpts in opposition to defendants' motion for summary judgment. (Doc. 95 at 34-37).[3]

A convicted prisoner's right to be free from the use of excessive force by a prison official is governed by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). An Eighth Amendment claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The "core judicial inquiry" on the subjective component is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Excessive force claims must focus "on the nature of the force rather than the extent of the injury. . . ." *Id.* at 34. In making this inquiry, the Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the responsible official; and the extent of the injury inflicted. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-321. "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Cordell*, 759 F.3d at 580-81 (citing *Wilkins*, 559 U.S. at 37). The absence of a serious injury is nonetheless relevant as a factor that suggests whether the use of force may "plausibly have been thought necessary" in a given situation. *Id.* (quoting *Hudson*, 503 U.S. at 7).

The objective component requires the "pain inflicted to be 'sufficiently serious.'" *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

---

[3] Plaintiff's memorandum is not admissible evidence in opposition to defendants' motion for summary judgment. Plaintiff may not rely on allegations or denials in his memorandum, which is an unsworn filing. *See Maston*, 832 F. Supp. 2d at 851-52.

Analysis of this element of an Eighth Amendment claim "requires a contextual investigation, one that is responsive to contemporary standards of decency." *Id.* (citations and internal quotations omitted).

      Plaintiff has failed to establish a genuine issue of fact on the subjective and objective components of his Eighth Amendment excessive use of force claim.  The undisputed evidence shows that plaintiff became belligerent and attacked Officer Conkle, choking and beating Conkle as he lay on the floor.  The defendant officers are those officers who responded to plaintiff's assault on Officer Conkle.  When defendant Patrick arrived on the scene, plaintiff still had Officer Conkle in a chokehold and refused a direct order to release Conkle.  Only then did defendant Patrick spray plaintiff with OC spray to force plaintiff to release Conkle.  Defendants Van Sickle and Patrick then took plaintiff to the ground, with defendant Patrick lying prone on top of plaintiff and holding him down.  The video shows plaintiff struggled with defendants Van Sickle and Patrick, who held him down until Sgt. Brabson arrived and placed plaintiff's hands in handcuffs.  Once plaintiff was secured with handcuffs, Sgt. Brabson, defendant Van Sickle, and defendant Messer brought plaintiff to his feet and began to escort plaintiff down the hallway.  Plaintiff can be seen on the video struggling with the officers before he is placed against the wall so the officers can regain control over him.  Officer Patrick was not part of the escort team, as he remained on the floor where plaintiff was initially taken to the ground.  The officers then escorted plaintiff to a stairwell and temporarily placed plaintiff against one wall to allow the officers with the medical gurney descend the stairway.  As the escort team continued up the stairs, plaintiff can be seen lunging toward the left as Sgt. Bear was descending the stairwell.  At this point, it appears the officers and plaintiff lost their balance on the stairs and tumbled back to the floor.  The officers then regained control over plaintiff and resumed escorting him to his

8

segregation cell. At no time are the officers seen throwing punches or slamming plaintiff against any walls or the floor.

Plaintiff attempts to create an issue of fact by citing to select portions of his criminal trial transcript. For example, plaintiff points to one line of defendant Patrick's testimony which states that plaintiff was "cooperative throughout [his] encounter with him." (Doc. 95-1 at 222, Tr. 216). However, defendant Patrick further testified that he actually had to pull plaintiff off Officer Conkle, and plaintiff was not being cooperative at the beginning of his encounter with him. (*Id*., Tr. 217). Defendant Patrick also testified that he had to administer pepper/OC spray to plaintiff because plaintiff refused direct orders to let go of Officer Conkle's throat. (*Id*., Tr. 218). Finally, defendant Patrick clarified that plaintiff became cooperative only after the officers had taken plaintiff to the ground. (*Id*., Tr. 223). This evidence does not create an issue of fact as to whether administering OC spray to plaintiff and taking him down to the ground immediately after he choked and punched Officer Conkle was a reasonable and justified use of force. The video evidence, while it contains no audio, nonetheless corroborates defendants' reports that plaintiff beat and choked Officer Conkle, which justified the officers' use of force to separate him from Conkle and regain control over plaintiff.

Plaintiff also cites to the criminal trial testimony of defendant Van Sickle, defendant Messer, and Sgt. Bear that plaintiff was aggressive, resisted, and lunged at Sgt. Bear on the stairway. (*Id*., Tr. 227-229, 238, 257, 262). Plaintiff attempts to discredit their testimony by citing to certain statements made by the trial judge, which plaintiff misinterprets to mean there was no contact between plaintiff and Bear on the stairway and the officers who testified otherwise "lied." (Doc. 95 at 37, citing Doc. 95-1 at Tr. 314-319). In fact, the trial judge stated that he believed the evidence regarding plaintiff's encounter with Sgt. Bear on the stairway was

9

not relevant to whether plaintiff criminally assaulted Officer Conkle, but because no one objected to the evidence, he allowed the officers' testimony. (Doc. 95-2 at 16, Tr. 315, 318). The trial court did not rule that the other officers "lied," and the testimony plaintiff cites does not create a genuine issue for trial on his excessive use of force claim. In any event, the video evidence shows that plaintiff appeared agitated and struggled with the officers as they attempted to escort him to segregation and that he lunged toward Sgt. Bear on the stairway. Plaintiff's version of events is blatantly contradicted by the video evidence such that no reasonable jury could believe it. *Scott*, 550 U.S. at 380.

The undisputed video evidence, coupled with the minor nature of plaintiff's injuries, indicates the use of force was "applied in a good-faith effort to maintain or restore discipline" and not maliciously or sadistically to cause harm. *Hudson*, 503 U.S. at 6-7. Corrections officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (quoting *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004)). Deploying a short burst of pepper spray, forcibly taking an inmate who is choking and punching a fellow officer to the ground, and placing an inmate against the wall in response to the inmate's resistance and refusal to obey direct orders is not force that is disproportionate to the need to control the unruly inmate and does not satisfy the subjective component of an Eighth Amendment claim. *See Jennings*, 93 F. App'x at 725 ("The videotape squarely demonstrates that Jennings disobeyed repeated direct orders prior to the use of pepper spray."); *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Jones v. Sage*, No. 1:15-cv-360, 2017 WL 4411813, at *6 (W.D. Mich. Aug. 31, 2017) (Report and Recommendation) ("The video evidence shows that defendant used minimal force in order to restrain plaintiff and protect himself. A far more forceful response

10

would have been justified without violating the Eighth Amendment's Cruel and Unusual Punishments Clause."), *adopted*, 2017 WL 4348892 (W.D. Mich. Sept. 29, 2017). The evidence shows the officers used minimal force to restrain plaintiff and protect Officer Conkle from further harm. No reasonable trier of fact could find on the present record that defendants acted maliciously and sadistically for the purpose of causing plaintiff serious harm. *See Hudson*, 503 U.S. at 7.

In addition, plaintiff has failed to present evidence that creates a genuine issue of fact on the objective element of his excessive use of force claim. No reasonable jury could conclude that the "pain inflicted" by defendants was "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 585.

Accordingly, plaintiff has failed to submit any evidence that creates a genuine issue of fact as to whether defendants' use of force was reasonable under the circumstances. Summary judgment should be granted in favor of defendants on plaintiff's Eighth Amendment excessive force claim.

### III. Conditions of confinement in J-2 segregation

Plaintiff's complaint alleges that while acting as correctional officers on their respective shifts in J-2 segregation from April 10, 2014 to April 17, 2014, defendants Cadogan, McCoy, Richardson, Barney, Faye, Lasswell, Rowland, Scott, Miller, Uhrig, Hale, Cooper, Thornhill, Shaw, and Lute deprived plaintiff of food, water, and sanitation in violation of plaintiff's Eighth Amendment rights. (Doc. 36). The complaint alleges that plaintiff informed each of the defendants that he needed to see a supervisor and he needed a shower; hygiene products; water to drink as the water in his cell was shut off; the ability to flush his toilet; pen, paper, kites, and grievance forms; and food. (*Id.*).

Defendants seek summary judgment on plaintiff's Eighth Amendment claim on the bases that plaintiff fails to present evidence attributing any of the alleged deprivations to a particular defendant, with the exception of defendant Cadogan; video evidence directly contradicts plaintiff's allegations that he was denied food; defendant Cadogan was not deliberately indifferent to plaintiff's conditions of confinement; and plaintiff failed to exhaust his administrative remedies against defendants under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Defendants have submitted a video of plaintiff's segregation cells on April 11, 12, 15, and 17, 2014. The April 11, 2014 video depicts an officer rolling a garbage can up to plaintiff's cell and unlocking his food slot. Plaintiff is then seen disposing of his food boxes and trays. The video of April 12, 15, and 17 shows a correctional officer handing plaintiff a Styrofoam food box on each of those days. In fact, on April 17, 2014, the video shows plaintiff being handed a food box through the cell's food slot, which plaintiff immediately shoves back out the slot. The box with food in it falls to the floor. Defendant Cadogan, by affidavit, states that when he made rounds in the J-2 segregation housing area between 12:28 p.m. and 12:38 p.m. on Friday, April 11, 2014 plaintiff Moore did not bring any complaints or issues to his attention. (Doc. 91-4; Ex. E). Cadogan states he did not work on Saturday or Sunday, April 12 and April 13, and did not make rounds in J-2 segregation on Monday, April 14 through Thursday, April 17, 2014. (*Id*.).

The only evidence plaintiff submits in support of this claim is his affidavit, which states: "I was held in J-2 segregation block from 4-10-14 thru 4-17-14 without water, food, clothing, bedding, hygiene and stationary (sic) products. The cell's toilet did not flush. I spoke to . . . Deputy Warden Anthony Cadogan" who was "informed of my treatment, but no-one took action to stop the abuse." (Doc. 3 at 16).

12

The Eighth Amendment requires prison officials "to provide humane conditions of confinement." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson,* 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles,* 450 F. App'x 448, 455-56 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 348 (1981)). To establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes,* 452 U.S. at 347). He then must subjectively show the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Id.* at 455 (citing *Farmer,* 511 U.S. at 834).

Plaintiff fails to present evidence establishing a genuine issue of fact on the objective component of his Eighth Amendment claim. "Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration.") (quotation omitted)). *See also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."). *Cf. Braswell v. Corrections Corp. of America*, 419 F. App'x 622, 627 (6th Cir. 2011) (finding an Eighth

13

Amendment issue of fact in a § 1983 action where for nine months, the prisoner had been left in a filthy, disgustingly unsanitary cell where mold grew in the toilet and the cell floor was littered with food trays). Plaintiff generally alleges he was denied food for his seven days in segregation, but the video evidence presented by defendants shows that on at least three of those days, plaintiff was given a food box. On one of those days, he shoved the box back out the food slot and onto the floor. The video also shows that on April 11, 2014, plaintiff's first day in segregation, plaintiff disposed of several food boxes and trays that appeared to have detritus. The deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same). Plaintiff has failed to present any evidence showing the number of times he was allegedly deprived of food while in segregation. Nor has he shown that he suffered any adverse health effects from the alleged deprivations of food, adequate sanitation, or water. *See Richmond*, 450 F. App'x at 456. He complains he was denied clothing while in segregation, but the video clearly shows plaintiff is dressed in an orange prison uniform in his cell. Plaintiff thus fails to establish he was subjected to conditions of confinement that were sufficiently serious to meet the objective component of his Eighth Amendment claim.

In addition, plaintiff has not presented evidence showing that the individual defendants were deliberately indifferent to the conditions of his confinement while he was in the segregation unit. The subjective component of plaintiff's Eighth Amendment claim requires plaintiff to

"show that (1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" *Richko v. Wayne Cty., Mich*., 819 F.3d 907, 915 (6th Cir. 2016) (quoting *Rouster v. Cty. of Saginaw,* 749 F.3d 437, 446 (6th Cir. 2014)). Plaintiff has presented no evidence whatsoever showing how each of the defendants were involved in the deprivation of his rights and how each of the three elements of the subjective component is satisfied. Plaintiff may not rest on the mere allegations of his complaint at the summary judgment stage. *See Anderson*, 477 U.S. at 259. Plaintiff has failed to present any evidence showing he meets the subjective component of his Eighth Amendment conditions of confinement claim.

To the extent plaintiff avers he "informed" defendant Cadogan "of my treatment," (Doc. 3 at 16), plaintiff does not present any evidence establishing the date he allegedly complained to Cadogan or the nature of his complaints. Defendant Cadogan presents evidence that during the seven days plaintiff was in segregation, Cadogan made rounds in the J-2 segregation unit for about 30 minutes on April 11, 2014 only, and he states that plaintiff never brought any complaints or issues to his attention. (Doc. 91-4, Cadogan Aff. ¶ 11). Plaintiff has not presented any evidence disputing Cadogan's affidavit to create a genuine issue for trial, and he may not rely on the unsworn allegations in his filings. *See Viergutz*, 375 F. App'x at 485. Therefore, plaintiff fails to create a genuine issue of fact on the subjective component of his Eighth Amendment claim against defendant Cadogan.[4]

**IV. Conclusion**

Based on the foregoing, it is **RECOMMENDED** that:

---

[4] The Court need not reach defendants' argument that plaintiff failed to exhaust his administrative remedies.

15

1. Defendants' motion for summary judgment (Doc. 91) be **GRANTED**.

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Court Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).


Date:  9/6/19                                             *s/Karen L. Litkovitz*

                                            Karen L. Litkovitz
                                            United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN C. MOORE,　　　　　　　　　　　　　　Case No. 1:16-cv-655
　　　Plaintiff,　　　　　　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　　　　　Litkovitz, M.J.
　　vs.

DONALD MORGAN, et al.,
　　　Defendants.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).