# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

**JOHN C. MOORE III,**

      **Plaintiff,**

     **v.**                          **Case No. 1:16–cv–655**

                                      **JUDGE DOUGLAS R. COLE**

**DONALD MORGAN, et al.,**      **Magistrate Judge Litkovitz**

      **Defendants.**

## OPINION AND ORDER

This cause comes before the Court pursuant to the Magistrate Judge's Report and Recommendation (the "R&R") (Doc. 99) recommending that this Court grant Defendants' Motion for Summary Judgment (Doc. 91). On November 6, 2019, Plaintiff John Moore filed his Objections (Doc. 102), to which the Defendants responded (Doc. 105). As discussed below, after conducting a de novo review pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), this Court **OVERRULES** the Objections (Doc. 102), **ADOPTS** the Report and Recommendation (Doc. 99), and **GRANTS** Defendants' Motion for Summary Judgment (Doc. 102).

## BACKGROUND

On June 27, 2016, Plaintiff John Moore, proceeding pro se, filed a Complaint against seventeen individuals and entities, including: the leadership staff at Southern Ohio Correctional Facility ("SOCF"); various SOCF corrections officers, lieutenants, and inspectors; the Ohio Department of Rehabilitation and Corrections, the Ohio State Highway Patrol, and several other individuals, many of whom were in

charge of those entities. (*See* Compl., Doc. 3, #101–02[1]). He alleged Eighth Amendment violations related to events that occurred in April 2014, which can be grouped into two categories: an alleged Eighth Amendment violation for excessive force related to an incident on April 10, 2014, and another Eighth Amendment violation for inhumane conditions during a week-long stay in segregation, following the April 10, 2014 incident.

## A.     April 10, 2014: Moore Assaulted Officer Conkle And Was Escorted To Segregation.

On April 10, 2014, Officer Conkle was patrolling the L-7 cellblock after inmates returned from lunch. ("Conkle Incident R.," Doc. 91, Ex. C., #737). As the relevant events occurred in a prison, there is video that captures much of them. This is a useful piece of evidence in the Court's consideration of the underlying facts. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007) (noting video evidence can be useful when there are conflicting descriptions of events and that the Court of Appeals "should have viewed the facts in the light depicted by the videotape" at summary judgment).

The video of the initial assault includes two camera angles, the latter of which is more helpful in reviewing that incident. (*See* "Video A," Doc. 91-1, Ex. A; R&R at #1282–83). The video from this angle shows several cell doors opening and a number of inmates entering the "range." (*Id.* at 10:04[2]). Moore and Officer Conkle enter the frame at nearly the same time—Moore is upstairs on one side of the range; Officer

---

[1] Reference to PageID Number.
[2] As there are multiple camera angles covering the same period of time, the timestamp here refers to the time elapsed in the video, not the date and time shown in the recording.

Conkle is upstairs on the opposite side. (*Id.* at 10:25). Between the two men, the second floor opens to the first floor below. (*Id.*). Moore walks along the upstairs tier, arrives at his cell, throws something inside, and then proceeds back the way he came. (*Id.* at 10:37). At one point, he turns around and looks in Officer Conkle's direction. (*Id.* at 10:40). Officer Conkle continues along the range on the other side of the second floor and descends the staircase to the first floor. (*Id.* at 11:02).

Moore reenters the picture on the first floor, opposite the stairs Officer Conkle just descended, and proceeds directly toward him. (*Id.* at 11:13). At first, the two engage in what appears to be a heated discussion, with Moore gesturing upstairs toward his cell. (*Id.* at 11:20). Moore then steps toward Officer Conkle, who backs away. (*Id.* at 11:32). Moore continues toward Officer Conkle, who appears to deploy OC spray; Moore backs away momentarily and Officer Conkle steps towards him. (*Id.* at 11:41). Moore then stops, turns, and lunges at Officer Conkle, swinging with his left hand; both men crash into the wall. As Moore continues swinging, Officer Conkle retreats to the middle of the range, tripping and falling to the ground. (*Id.* at 11:47–11:54). Moore then stands over Officer Conkle for the next 16 seconds, using his right hand to hold him down and his left to punch toward his head and facial area. (*Id.* at 11:54–12:10). Officer Conkle's head can be seen hitting the floor multiple times. (*Id.*).

Within seconds, two responding officers arrive, tackling Moore off Officer Conkle and forcing him to the ground. (*Id.* at 12:14). About ten seconds later, two more officers arrive. (*Id.* at 12:30). One tends to Officer Conkle; the other assists with

restraining Moore. (*Id.*). Several more officers arrive; some restrain Moore while others tend to Officer Conkle, who remains on the floor bleeding. (*Id.* at 12:49).

Eventually, officers get Moore to his feet and proceed to escort him out of the range. (*Id.* at 13:06). They appear to lose their grip on him, forcing Moore against the wall so they can regain control. (*Id.* at 13:10). Switching to the other camera angle, the officers' tussle with Moore continues. (*Id.* at 3:58). After regaining control, the officers continue escorting Moore, who appears to continue struggling against them. (*Id.* at 4:12). As the group approaches the stairs, the officers escorting Moore place him against the wall at the base of the stairs so a medical gurney can pass. (*Id.* at 4:34). The pad to the gurney falls down the stairs, where it is retrieved by an officer, and the officers escorting Moore attempt to ascend the stairs. (*See id.*). Either the officers, Moore, or both, appear to lose their footing, and the group falls to the floor. (*Id.* at 4:42). After again regaining control, the officers again stand Moore up, continue up the stairs, and proceed out of the camera's view. (*Id.* at 4:54–5:51).

There is no video in the record after Moore leaves the range, but officer incident reports indicate that when they made it to the "L Corridor," Lt. Dyer took over escorting Moore. (Brabson Incident R., Doc. 91-3, #742). The group then headed to the segregation unit, when Moore "again started pulling away and struggling and had to be placed on the wall multiple times to maintain control of him." (Dyer Incident R., Doc. 91-3, #744). After placing Moore in the "strip cage" and conducting a strip search, Moore was placed in "J2 cell 1." (*Id.*). He was then checked by someone from

the SOCF medical team. (*See, e.g.*, Brabson Incident R. at #742 (" … all checked by medical[.]"); Dyer Incident R. at #744 ("Staff and Inmate checked by Medical.")).

Moore maintains that he suffered substantial injuries as a result of this incident, including "pain, swelling, blood inside [his] mouth, and a black eye." (Moore Aff., Doc. 3, #116). Some injuries are corroborated by the Medical Exam Report taken shortly after the incident. (*See* Med. Exam R., Doc. 3, #133–37). That report states Moore had an "area under right eye with [a] swollen and bruised nickel sized swollen knot by bottom lid. Inside of mouth cut right side. Left wrist swollen and bruised. Right arm swollen and bruised." (*Id.* at #133). Medical staff also x-rayed Moore's left hand, right forearm, and left wrist, which revealed "no acute findings." (*Id.* at #134–37).

## B. April 10, 2014, Through April 17, 2014: Moore Was Housed In J-2, SOCF's Segregation Unit.

Following this incident, Moore was housed in a segregation unit known as J-2. (Compl. at #107; Am. Compl., Doc. #36, #329). He was initially assigned, as noted above, to cell J-2-1 and placed on "Constant Watch" for his own protection. (Compl. at #107). While there, Moore alleges that he was deprived of all food, with the exception of two "meals" over the course of seven days. (*Id.*). He alleges that he received "scraps" of food, specifically "2x [he] got trays that had either been discarded by someone else or that was missing the main entree." (*Id.*). Moore was later transferred to another cell, J-2-41, where he alleges that he was again denied "food, bedding, hygiene products, writting [sic] utensils and clothing." (*Id.* at #107–08). He also alleges, at multiple points, that he was denied various medications. (*Id.*). In

support of these allegations, Moore submitted with his Complaint an affidavit in which he avers that he was "held in J-2 segregation block from 4-10-14 thru [sic] 4-17-14 without water, food clothing, bedding, hygiene and stationary products. The cell's toilet did not flush." (Moore Aff., Doc. 3, #116). He further avers that he spoke to prison employees about this, but "no-one took action to stop the abuse." (*Id*.).

At the Magistrate Judge's direction, Moore filed an amended complaint, which makes similar, generalized allegations that he was deprived food, water (the water in his cell was shut off), and hygiene products, that officers would not flush his toilet, and that he was not permitted to go to "rec," shower, or "wash up." (Am. Compl. at #329). The Amended Complaint does not track the initial Complaint and is devoid of any allegation about deprivations of medicine. (*See id*.). These general arguments, along with allegations of staged, forged, and withheld evidence, are repeated throughout Moore's response to Defendants' Motion for Summary Judgment. (*See generally* Pl.'s Resp. to Defs.' Mot. for Summ. J., Doc. 95, #802).

Conversely, the Defendants offered video evidence from J-2 block and Cadogan's unsworn statement in support of summary judgment. As for the video, it shows Moore disposing of food trays and boxes on April 11th. ("Video B," Doc. 91-2, Ex. B, #733, 00:10–00:52[3]). It also shows him receiving food boxes on April 12th, 15th, and 17th. (*Id*. at 01:01–01:47). In fact, the video from April 17th shows Moore rejecting a meal, shoving the just-delivered food box out of the slot in his cell door. (*Id*. at 02:34–02:44). Defendants also submitted an unsworn statement by Cadogan,

---

[3] Again, as the video file contains multiple videos over multiple days, the timestamp refers to the time elapsed in the video file, not the timestamp shown in the video itself.

who stated that on "Friday, April 11, 2014 [he] made rounds in the J-2 segregation housing area between 12:28 PM and 12:38 PM." (Cadogan Decl., ¶ 11, Doc. 91-4, #771). He further stated that he did not work, and therefore did not make rounds, on April 12th or April 13th. (*Id.* at ¶ 12.). And although he worked April 14th through April 17th, he did not conduct rounds in J-2 segregation any of those days. (*Id.* at ¶¶ 13–14). Cadogan further stated that Moore did not raise any issues or complaints to him, and if he had, that he would have taken the appropriate steps to address them. (*Id.* at ¶ 10). Last, Defendants submitted the employee visit record for J-2, during Moore's time there, which indicates there was "med pass" by jail staff on April 12th, 13th, 14th, 15th, and 16th. (*See* Employee Visit R., Doc. 91-5, #773–782).[4] Moore disputes this and maintains that these incidents were violations of his Eighth Amendment rights.

## C.   Procedural History.

Moore filed suit on June 17, 2016, but because he is incarcerated and proceeding pro se, the action was referred to the Magistrate Judge by local rule. She immediately dismissed the Ohio Department of Rehabilitation and Corrections, the Ohio State Highway Patrol, SOCF Warden Gary Mohr, Keith Fellure, Sgt. Michael Maughmer, Charles Miller, Lienna Mahlman, Joe Hale, and Antonio[5] Lee. (*See* June 27 Order & R.&R., Doc. 5, #183–94, *adopted*, Doc. 16, #232). The Magistrate Judge allowed Moore's claim to proceed against Lt. Dyer, Sgt. Messer, and Officers Van

---

[4] The R&R did not specifically address whether Moore received his medications on any given day during his time in J-2, which is addressed below.

[5] Mr. Lee is referred to as "Anthony," "Antonin" and "Antonio" in different documents. This is, it appears, the same person.

Sickle, Patrick, Morgan, and Deputy Warden Cadogan, plus unidentified John Doe supervisors and corrections officers. (*See id.*).

Moore then attempted to amend his complaint by adding 19 more named defendants (the "Additional Officers"), whom the Magistrate Judge permitted Moore to serve on July 7, 2017. (*See* Order, Doc. 42, #360). This was immediately met with a motion to dismiss by all the newly-added defendants. (*See* Doc. 45). The Magistrate Judge recommended denying that motion, which Judge Dlott adopted.[6] (*See* Doc. 64, #591). After discovery, several Defendants were dismissed because Moore failed to serve them. (*See* Doc. 89, #707).

On January 18, 2019, the remaining Defendants moved for summary judgment. (*See* Defs.' Mot. for Summ. J., Doc. 91, #710). At that time, the only remaining claims were: (1) an Eighth Amendment inhumane treatment claim asserted against Cadogan and the Additional Officers (McCoy, Lute, Richardson, Barney, Faye, Laswell, Thornhill, Rowland, Shaw, Hoover, Scott, Crabtree, Miller, Uhrig, Hale, and Cooper) based on Moore's time in segregation; and (2) an Eighth Amendment excessive force claim against Lt. Dyer, Sgt. Messer, and Officers Van Sickle and Patrick, based on the role each played in connection with the response to Moore's attack on Officer Conkle. As to the inhumane treatment claim, Cadogan argued that there were insufficient facts to establish that he was deliberately indifferent, and the Additional Officers argued that Moore had not specifically named them as participating in the alleged events. (*See* Defs.' Mot. at #717). Lt. Dyer, Sgt.

---

[6] This matter was reassigned to the undersigned judge on December 11, 2019.

Messer, and Officers Van Sickle and Patrick, on the other hand, sought to dismiss the Eighth Amendment excessive force claim on the grounds that the undisputed facts showed they had applied appropriate force. (*Id.*).

Four days later, on January 22, 2019, the Magistrate Judge issued a Notice to Moore regarding the Defendants' filing, warning him that failure to respond or doing so and merely "rest[ing] on the allegations in [his] Complaint" could result in judgment being entered against him. (Doc. 92, #793).

On February 27, 2019, Moore filed his Response. (*See* Pl.'s Resp., Doc. 95, #797–812). In that filing, Moore provided detailed annotations of the videos Defendants' submitted, various General Orders issued by the United States District Court for the Southern District of Ohio, several kites (prison complaint forms), administrative appeals records, and two affidavits of other prisoners attesting to their own experiences in the J-2 segregation block. (*See id.* at #813–833). He also attached transcripts and exhibits from his jury trial stemming from his assault of Officer Conkle. (*See id.* Ex. 1, 2, Docs. 95-1, 95-2, #834–1270). Defendants did not reply.

**D.    Moore's "Objections" And The Defendants' Response.**

The Magistrate Judge issued her Report and Recommendation on September 6, 2019, recommending this Court grant the Defendants' Motion for Summary Judgment. (*See* R&R at #1280–96). Specifically, she recommended that summary judgment was proper as to the excessive force claim because "the officer[s] used minimal force to restrain [P]laintiff and protect Officer Conkle" and Moore "failed to

submit any evidence that creates a genuine issue of fact as to whether [D]efendants' use of force was reasonable under the circumstances." (*See id.* at #1290).

She further recommended granting summary judgment as to the inhumane treatment against Cadogan because Moore could not establish either the objective or subjective prongs of that claim. First, she found that Moore did not suffer from objectively inhumane treatment while in solitary confinement. (*Id.* at #1292). The Magistrate Judge further found that even if he had, Cadogan did not act with deliberate indifference to Moore's conditions of confinement. (*Id.* at #1293–94). Finally, the Magistrate Judge recommended summary judgment for the Additional Officers because Moore failed to show that they were individually involved with, let alone deliberately indifferent to, his conditions of confinement while he was in segregation. (*Id.* at #1293–94).

Moore responded to the R&R by filing a "Motion In Opposition To Summary Judgement." (*See* Pl.'s Mot. in Opp. to Summ. J. ("Obj."), Doc. 102, #1300–15). While that is not the appropriate label for his filing, as Moore is appearing pro se, the Court construes this as an objection to the R&R. *See, e.g.*, *Walker v. Joyce*, No. 3:15-cv-136, 2016 WL 8669788, at *1 n.1 (S.D. Ohio July 8, 2016) (construing a pro se plaintiff's memorandum in opposition to a motion to dismiss, filed while the R&R was pending, instead as an objection to the R&R). Instead of objecting to specific portions of the R&R, however, Moore instead makes a more general objection, claiming the Magistrate Judge did not view the evidence in a light most favorable to him as the non-moving party. (Obj. at #1300). He then goes on to relitigate his Complaint,

describe a litany of issues he has with this action in general, and accuse Defendants of withholding evidence, tampering with evidence, and committing perjury. (*See generally id.* at #1300–15). By way of reply to his Objection, Defendants note that Moore failed to "present any case law precedent that undermines or directly contradicts the rationale of the Magistrate Judge" and that Moore was "unable to meet his rebuttal burden." (Doc. 105, #1326–28). This, they argue, is insufficient to warrant rejecting the R&R. (*Id.* at #1327–28).

## LAW AND ANALYSIS

Objections to a Report and Recommendation are reviewed de novo. "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.§ 636(b)(1); *see also* Fed. R. Civ. P. 72(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

## A. Procedural Requirements For A *Pro Se* Prisoner Litigant At The Summary Judgment Stage.

"The leniency granted to pro se petitioners … is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). "Pro se plaintiffs are treated to less stringent standards but 'they are not automatically entitled to take every case to trial.'" *Id.* (quoting *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). There are two procedural aspects to Moore's Complaint, Amended Complaint, Response to Defendants' Motion for Summary Judgment, and Objections that warrant brief

discussion. The first point has to do with what is expected of Moore at the summary judgment stage. The latter is related to the nature and specificity of his Objections.

### 1. *Moore's Responsibilities At Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). When faced with a motion for summary judgment, the non-moving party cannot "rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A litigant proceeding pro se is not held to a lesser or different standard. *See Viergutz v. Lucent Tech., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (noting that fact a litigant is proceeding pro se "does not alter his duty on a summary judgment motion"). While not held to any lesser standard, pro se *prisoners* are afforded notice from the court about what is required of them at the summary judgment stage. *See United States v. Ninety Three Firearms*, 330 F.3d 414, 426–28 (6th Cir. 2003).

That notice reiterates to pro se prisoners that they cannot rest on the facts alleged in their complaint alone. But if the complaint is verified, it can be appropriately considered at the summary judgment stage. *See Miller v. Jones*, 483 F. App'x 202, 203 (6th Cir. 2012). A verified complaint warrants consideration at summary judgment "even if the prisoner fails to cite that evidence in response to a

motion for summary judgment." *Id.* The requirements that a complaint must meet to constitute a verified complaint are relaxed for prisoners. *See Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (recognizing a pro se prisoner's complaint is a verified complaint merely when it recites the requisite statutory language).

Here, neither the Complaint nor Amended Complaint are verified, as both notarization and the requisite statutory language are missing. (*See* Compl. at #115; Am. Compl. at #330). Moore did submit a separate notarized affidavit attached to his initial Complaint, which should be considered at summary judgment. (*See* Compl. at #116). Absent verification, though, it was appropriate for the Magistrate Judge to disregard the factual assertions in the Complaint and Amended Complaint.

### 2. *Moore's Option To Object To The Report And Recommendation.*

"Like the filings of many pro se prisoners," objections to reports and recommendations are often "written in a stream of consciousness style that tries to throw as broad of a legal reach as possible by citing to legal principles that are not directly applicable or are only tangentially related to the merits of [a] case." *Jones v. City of Fairlawn*, No. 5:03-cv-1976, 2005 WL 3543970, at *1 (N.D. Ohio Dec. 28, 2005). When a prisoner litigant offers only general objections, it "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *Boyd v. United States*, No. 1:16-cv-802, 2017 WL 680634, at *1 (S.D. Ohio Feb. 21, 2017) (citing *Howard*, but noting "the objections of a petitioner appearing pro se will be construed liberally" (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). "[A] general objection to the entirety of a magistrate judge's report,

without specifying a single issue of contention, fails to satisfy" this specificity requirement. *Howard*, 932 F.2d at 509.

Moore begins his objections here by stating that he opposes summary judgment because "the [Magistrate Judge] <u>must</u> consider all pleadings, depositions, affidavits, all admissions on file and interrogatories and answers. [sic] In the 'light most favorable to the nonmovant [sic] party.'" (Obj. at #1300 (emphasis in original) (quoting *Satterfield v. Tenn.*, 295 F.3d 611 (6th Cir. 2002))). Construing Moore's filing as favorably to him as possible, the Court finds that this language appears to be an objection to how the Magistrate Judge reviewed the evidence in her decision to grant Defendants' Motion. Moore makes no specific objection other than this. Thus, in light of this understanding of Moore's objection, the Court will conduct a de novo review of the R&R to determine whether the Magistrate Judge failed to construe the record evidence in the light most favorable to Moore, or if instead, she viewed the evidence in Moore's favor, yet still recommended summary judgment.

## B. Defendants Did Not Violate Moore's Eighth Amendment Rights When Responding To His Assault On Officer Conkle Or While Escorting Him To Segregation.

The Eighth Amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishments" on prisoners. U.S. Const. amend. VIII. "But not every shove or restraint gives rise to a constitutional violation." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). "Where a prison security measure is undertaken to resolve a disturbance … that indisputably poses significant risks to the safety of inmates and prison staff." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986).

14

The proper analysis when faced with an Eighth Amendment claim in that setting is "whether the measure taken inflicted unnecessary and wanton pain and suffering." *Id.* (citation and quotation omitted). This "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." *Id.*; *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) ("[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is set out in *Whitley*: whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.").[7]

Analyzing excessive force claims requires both a subjective and an objective inquiry. The subjective component looks to the state of mind of prison officials, while the objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell*, 759 F.3d at 580. The objective inquiry is relative based on the context in which the force is used. *See id.* This can include, for example, considering "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted." *Whitley*, 475 U.S. at 321 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.),

---

[7] Supreme Court precedent also cautions against second-guessing corrections officials who must make split-second decisions in a fast-paced and pressure-filled environment. *See Hudson*, 503 U.S. at 6 ("[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force."). "[C]orrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley*, 475 U.S. at 319).

*cert. denied sub nom. John v. Johnson*, 414 U.S. 1033 (1973), *abrogated on other grounds as stated in Pelfrey v. Chambers*, 43 F.3d 1034, 1036–37 (6th Cir. 1995)).

Based on the evidence before her, the Magistrate Judge determined summary judgment was appropriate on the excessive force claim because Moore failed to establish a genuine issue of fact as to either the subjective or the objective component. (*See* R&R at #1287–90). As to the former, the Magistrate Judge found the video evidence compelling. As noted above, the subjective component asks whether the pain was inflicted for legitimate penological purposes, or instead merely to sadistically cause harm. Here, the Magistrate judge found that the video indisputably showed that it was the former—that Moore's attack on Officer Conkle "justified the officers' use of force to separate [Moore] from Conkle and regain control over [him]." (*Id.* at #1288). She also went on to find that Moore's "version of events is blatantly contradicted by the video evidence such that no reasonable jury could believe" his rendition. (*Id.* at #1289). As for the objective component, the Magistrate Judge noted "the minor nature of [Moore's] injuries," which was confirmed by his medical reports. (*Id.* at #1289–90). She determined that no reasonable jury could conclude that the responding officers violated Moore's Eighth Amendment rights.

After conducting a de novo review of the record evidence, this Court agrees. The officers' use of force did not violate Moore's Eighth Amendment rights. Certainly, protecting a fellow correctional officer from an inmate attack constitutes a legitimate penological purpose for using some level of force. And here, the video reveals that the officers' attempts to stop Moore's assault and to prevent him from further assaulting

Officer Conkle, as well as their subsequent efforts to restrain and remove him from the range, were proportional to the needs of the situation. And on the objective front, Moore's medical examination following that assault indeed confirms the relatively minor nature of his injuries. (*See* Med. Exam R. at #133–35 (noting some swelling, bruising, and a cut inside Moore's mouth and prescribing x-rays (which showed no damage), an ice pack, and Motrin)). In short, Moore failed to identify any record evidence, however interpreted, that creates a genuine issue of fact as to either prong of the Eighth Amendment framework. Accordingly, his Objection that the Magistrate Judge did not view the evidence in the appropriate light is overruled, and Lt. Dyer, Sgt. Messer, and Officers Van Sickle and Patrick are entitled to summary judgment on this claim.

### C.    Defendants Did Not Violate Moore's Eighth Amendment Rights During His Time In Segregation.

The Eighth Amendment also requires prison officials "to provide humane conditions of confinement" to inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). But "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Instead, the Eighth Amendment "is concerned only with deprivations of essential food, medical care, or sanitation, or other conditions intolerable for prison confinement." *Richmond v. Settles*, 450 F. App'x 448, 455–56 (6th Cir. 2011) (citation and quotation omitted).

In making the "tolerability" determination, "'the severity and duration of deprivations are inversely proportional.'" *Lamb v. Howe*, 677 F. App'x 204, 209 (6th

17

Cir. 2017) (quoting parenthetically *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)). "'[M]inor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.'" *Id.* (quoting parenthetically *DeSpain*, 264 F.3d at 974). For example, "[a] filthy, overcrowded cell and a diet of 'grue' [a substance created by mashing meat, potatoes, oleo, syrup, vegetables, eggs, and seasoning into a paste and baking the mixture in a pan] might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).

Against this backdrop, the Eighth Amendment framework for inhumane condition claims once again requires the prisoner to make both an objective and subjective showing.[8] That is, Moore must demonstrate that Defendants denied him "the minimal civilized measure of life's necessities" (i.e., an objective inquiry) and did so wantonly or with deliberate indifference (a subjective inquiry). *Id.* Satisfying the latter inquiry requires Moore to offer some evidence, even circumstantial evidence, to the effect that Cadogan or each Officer of the Additional Officers "(1) … subjectively perceived facts from which to infer a substantial risk to the prisoner, (2) that [they] 'did in fact draw the inference,' and (3) … 'then disregarded that risk.'" *Richko v.*

---

[8] The Magistrate Judge's R&R focuses almost entirely on the objective component of this inquiry, namely, whether the alleged deprivation of food was sufficient to give rise to an Eighth Amendment violation. (*See* R&R at #1290–94). The Defendants submitted video evidence regarding this point, too. Quizzically, however, Defendants also specifically noted they were reserving argument on the "objective component argument regarding alleged deprivation of food and water for a later date." (Defs.' Mot. for Summ. J. at #723 n.4).

*Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) (quoting *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014) (discussing failure to protect claims)). "Critical to the subjective inquiry is the requirement of specific evidence that *each individual defendant* acted with deliberate indifference." *Ruiz-Bueno v. Scott*, 639 F. App'x 354, 359 (6th Cir. 2016) (emphasis in original). This requires a district court to "'consider whether each individual defendant had a sufficiently culpable state of mind.'" *Id.* (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 542 (6th Cir. 2008)).

Starting with the objective component of his claim, here Moore makes several allegations about his conditions of incarceration during his week-long stay in segregation, including that he was deprived of food and water, that his toilet would not flush, and that he was not given clothes or stationary products. (*See* Am. Compl. at #329).[9] Although the Magistrate Judge found that these were insufficient to satisfy the objective prong of the Eighth Amendment inquiry (*see* R&R at #1293 ("Plaintiff thus fails to establish he was subjected to conditions of confinement that were sufficiently serious to meet the objective component of his Eighth Amendment claim.")), the Court is less certain on that front. But as discussed immediately below,

---

[9] In his initial Complaint, Moore alleges that he was deprived of medication. (Compl. at #108). He does not raise this issue in his Amended Complaint, which the Magistrate Judge directed him to file after adding several defendants. As neither complaint are verified complaints, the Court does not consider them at this point. Defendants submitted video evidence they claim purports to show Moore receiving medicine on April 17th. (Defs.' Mem., Doc. 91, #715). They also submitted employee logs for J-2 during Moore's confinement that indicate "med pass" (i.e., medicine distribution) occurred each day he was housed there. (Employee Log, Doc. 91-5, #773–82). Moore must come forward with something more than his pleadings to substantiate his claim that he was deprived medicine. To the extent he initially claimed he was deprived medicine, Moore does raise this issue in his Response to the Defendants' Motion for Summary Judgment. Like much of his memorandum, he cites no evidence to support, let alone a genuine dispute of material fact, as to these claims.

the Court need not reach that issue, as the Court agrees with the Magistrate Judge that Moore's claim fails on the subjective prong.

To survive summary judgment on the subjective prong of the inhumane conditions claim, it was incumbent on Moore "to present some *evidence* from which a reasonable juror could conclude that the individual defendants were deliberately indifferent" to his conditions of confinement. *Richko*, 819 F.3d at 915 (emphasis added). Absent an express admission by a prison official that they disregarded an inmate's inhumane conditions of confinement, Moore could demonstrate deliberate indifference "in the usual ways, including [by] inference from circumstantial evidence[.]" *Id.* (quotation omitted) (citing *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009)).

On that front, Moore asserts that he "spoke to … Deputy Warden Anthony Cadogan and State Trooper Keith Fellure accompanied by Jail Investigator Charles Miller." (Moore Aff., Doc. 3, #116). He further states that they "[a]ll were informed of my treatment, but no-one took action to stop the abuse." (*Id.*). But Moore's first problem is that Keith Fellure and Charles Miller were previously dismissed from this suit. And the statement that he told Cadogan, Fellure, and Miller does not establish any knowledge on the part of the Additional Officers. But there is nothing else in the Amended Complaint or record, let alone "specific evidence," that any of those Additional Officers knew of, let alone deliberately disregarded, the allegedly

20

inhumane conditions related to Moore's confinement.[10] This lack of specificity and dearth of evidence is insufficient to raise a jury question as to the Additional Officers.

That leaves Cadogan. He presents a somewhat different case on the subjective component. Recall that establishing this prong requires a showing of both (1) knowledge, and (2) deliberate indifference in the face of that knowledge. *See Richko*, 819 F.3d at 915. Here, viewing the evidence in the light most favorable to Moore, the former is present—Moore asserts that he complained directly to Cadogan about the cell conditions on April 11, 2014. Cadogan says otherwise, but a Court cannot resolve that dispute on summary judgment.

The problem for Moore, though, is that even crediting his testimony, his claim nevertheless fails as a matter of law as he cannot show that Cadogan acted with deliberate indifference when faced with this information. "The requisite state of mind" for deliberate indifference lies somewhere beyond "mere negligence" but beneath "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). Importantly, "[f]or liability to attach, [Cadogan] must have been 'aware of facts from which the inference could be drawn that *a substantial risk of serious harm* existed.'" *Id.* (quoting *Farmer*, 511 U.S. at 837) (emphasis added).

---

[10] Moore did submit two other affidavits, one by Joshua P. Varney and another by Anthony Randall, two other inmates at SOCF. They generally attest to the conditions of confinement at SOCF and in J-2 specifically, but do not aver to know anything about Moore's time in J-2, or anything in particular about the allegations Moore raised. (*See* Pl.'s Resp. at #821–22).

The record contains no evidence that would allow Moore to clear this hurdle. Moore's response to the Summary Judgment Motion on this point is indicative of the conclusory nature of his claims:

> Warden Morgan + Cadogan made rounds in J-2 on 4-11-14. I informed both, that I was <u>not</u> being fed, had no water, could not flush my toilet, was not getting my meds and had <u>not</u> received my seg. pack-up. (hygiene, stamps + stationary). I spoke to Cadogan first. He stated, "Tell the Warden he's making rounds.["] When Warden Morgan came by my cell, I repeated everything to him. His response was "You're lucky you're not dead." These responses by the top two supervisors for the entire prison amounts to tacit authorization to mistreat me.
>
> ....
>
> Both objective + subjective requirements have been met when you read this motion, original complaint and view the evidence submitted by myself + defense counsel. All defendants are identified and their actions <u>and</u> inaction are well documented.

(Pl.'s Resp. at #805 (emphasis in original)).

Even under Moore's telling, Cadogan's response does not reflect deliberate indifference. Rather than ignoring Moore's complaints, Cadogan tells Moore that the Warden will be coming by, and encourages Moore to share his concerns with him. Presumably, the Warden would have the power to remedy any problems with the cell, to the extent that they existed. To be sure, if there was going to be a substantial period of time that elapsed before the Warden appeared, or if the conditions were bad enough that even a short delay would inflict unconstitutional harm, perhaps Cadogan's act of putting Moore off could constitute deliberate indifference. But nothing in the record here suggests that was the case. To the contrary, from Moore's telling, it appears that the Warden came by shortly after Cadogan.

In fairness to Moore, *the Warden's* alleged response, assuming Moore is accurately conveying it, is perhaps a closer call on the subjective prong. Responding to a complaint about conditions of confinement with "You're lucky you're not dead," facially suggests at least a certain level of indifference to a prisoner's plight. But, as noted above, the Sixth Circuit has made clear that deliberate indifference is an individualized determination as to each defendant. *Ruiz-Bueno*, 639 F. App'x at 359. Thus, even if the Warden's comment is sufficient evidence from which a jury could find that he had been deliberately indifferent (an issue that the Court does not reach), that evidence does not suffice to justify a claim against Cadogan. And as for the Warden, Moore never served him.

On the evidence before it, after conducting a de novo review, this Court agrees with the ultimate recommendation of the Magistrate Judge, even though it reaches that conclusion on somewhat different grounds. Summary judgment in favor of Cadogan and the Additional Officers is appropriate. As the Court finds the Defendants did not violate the Eighth Amendment, the Court need not, and thus does not, consider the issue of qualified immunity.

## CONCLUSION

Based on the above, this Court **OVERRULES** Moore's Objections (Doc. 95), **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. 99), and **GRANTS** summary judgment in favor of the Defendants (Doc. 91). This Court also agrees with the Magistrate Judge's recommendation that, pursuant to 28 U.S.C.

§ 1915(a)(3), any appeal may not proceed in forma pauperis, as that appeal would not be taken in good faith. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED.**

August 21, 2020
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

24